# Supreme Court of Florida

_____

No. SC2024-1241
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**ALEJANDRO L. MARRIAGA,**
Respondent.

September 18, 2025

PER CURIAM.

We have for review a referee's report recommending that Respondent, Alejandro L. Marriaga, be found guilty of professional misconduct in violation of the Rules Regulating The Florida Bar and suspended from the practice of law for three years. We have jurisdiction. _See_ art. V, § 15, Fla. Const.

We approve the referee's findings of fact and recommendations of guilt but disapprove the referee's recommended discipline. A three-year rehabilitative suspension is unfit given the intentional

misconduct at issue. It is also inadequate to protect the public and preserve the profession's integrity. Instead, we order disbarment.

## I

Alejandro L. Marriaga's actions as a purportedly "neutral settlement agent" led The Florida Bar to file a four-count complaint against him. It said he intentionally misdirected funds from real estate closings, failed to advise buyers of his conflicts of interest, and failed to comply with trust accounting rules. The Chief Judge of the Nineteenth Judicial Circuit appointed a referee who conducted guilt and discipline hearings and submitted a report with findings and recommendations.

Marriaga was a sole practitioner at Marriaga Law Group, P.A., doing business as Lawyers Title Network. Steel X Homes, LLC marketed house designs for construction but lacked its own construction license. From 2018 until November 2022, Marriaga served as Steel X's attorney. Steel X's corporate filings with the State of Florida listed Marriaga as its manager from 2021 to 2022 and as its registered agent from 2020 to 2023.

Marriaga testified that he had a verbal agreement with Steel X to handle its real estate closings, but that he did not represent

- 2 -

Steel X at those closings.[1]  Instead, he served as a "neutral settlement agent" and ran closing transactions between buyers and Steel X, the seller.  Buyers in these transactions understood Marriaga to be responsible for reviewing and signing documents, holding their funds in escrow, and disbursing those funds according to the closing disclosure documents.  The buyers paid Marriaga a fee for his work as settlement agent and escrow holder.

**A**

In 2021, Marriaga acted as both escrow and settlement agent in a series of four real estate closings involving Steel X.  He told buyers he was a neutral third party while concealing his roles as Steel X's attorney, manager, and registered agent.  Three buyers purchased vacant lots from Steel X; the fourth already owned a vacant lot.  Each hired Steel X to build a home and signed separate construction agreements with one of two builders since Steel X itself lacked a construction license.

---

1.  The referee's report mentions no other evidence of that agreement.

In each transaction, the buyer wired closing funds directly to Marriaga, who deposited them into his Interest on Lawyer Trust Account[2] rather than his real estate closing escrow account. The closing disclosures in each case allocated specific amounts to the builder as initial draws for construction, but neither builder received what was due. Instead, Marriaga deviated from the closing disclosure documents and diverted the builder draws to Steel X, its affiliated entities, and, in one instance, to his own law firm.

In one case, Marriaga paid inflated real estate commissions to the seller's real estate broker, Ruth Miranda.[3] The closing documents listed Miranda's entity variously as "Solar X Realty" and "Steel X Homes." Her email address linked her to "Solar X Homes" and the construction contract identified her as the "Steel X Homes Xpert." Marriaga admitted that these entities were connected to

---

2. A lawyer's Interest on Lawyer Trust Account is an interest- or dividend-bearing trust account for holding small or short-term client funds. *See* R. Regulating Fla. Bar 5-1.1. Instead of earning interest for the client, the interest goes to Funding Florida Legal Aid, formerly known as The Florida Bar Foundation, Inc. *See id.*

3. The referee's report does not say whether Marriaga and Miranda operated independently or shared a coordinated role in diverting closing proceeds.

Steel X. He testified that the same individuals operated both Steel X and Solar X Homes, LLC (Solar X Homes), and that Solar X Homes was the predecessor entity to Steel X. State filings listed Marriaga as Solar X Homes's registered agent in 2021, and Solar X Realty and Solar X Homes shared the same principal address. The buyer sued Steel X, Marriaga, and Marriaga Law Group. Marriaga represented all three defendants in the suit, and claimed no conflict existed because his interests aligned with Steel X's.

Marriaga also failed to render timely accounting ledgers to three of the buyers. In one case, the buyer repeatedly emailed Lawyers Title Network for a full accounting ledger after the builder notified the buyer that it had not been paid. Marriaga's nonlawyer employee sent copies of the closing documents to the buyer, stating that they were all she was authorized to release. When the buyer continued to seek a full accounting, the employee told the buyer that the ledger balance was zero, no funds remained, and he should contact his builder. Nearly three months after the buyer filed a grievance with the Bar, and almost a year after closing, Marriaga finally produced the ledger, which revealed discrepancies between the closing disclosure documents and actual disbursements.

Across all these transactions, Marriaga failed to follow the closing disclosures, diverted escrow funds without consent, and concealed his significant ties to Steel X and its affiliates. None of the promised homes were built, and, in each case, buyers lost tens of thousands of dollars.

According to the referee's report, Marriaga was entrusted with $221,365.37 in funds from the four buyers, not including amounts paid directly to Steel X in one transaction. At least $41,389.56[4] of that was designated for the builders in the closing disclosure documents but never reached them. Instead, Marriaga transferred the funds without the buyers' authorization to Steel X and its affiliated entities, with which he maintained direct ties as legal counsel, registered agent, and manager. He did so with the intent to conceal those connections from the buyers and to reroute their escrow funds in violation of the closing disclosures, for his own

---

4. The referee's report did not compute the builder payment owed under the closing disclosure documents in one of the cases. This figure also does not include additional funds that Marriaga improperly diverted to Steel X, its affiliates, and Miranda.

benefit and to the detriment of his clients, without notice or consent.

**B**

The referee recommended that Marriaga be found guilty of: four counts of violating rule 3-4.3 (Misconduct and Minor Misconduct); three counts of violating rule 4-1.4(a) (Informing Client of Status of Representation); three counts of violating rule 4-1.4(b) (Duty to Explain Matters to Client); four counts of violating rule 4-1.7(a) (Representing Adverse Interests); four counts of violating rule 4-1.15 (Safekeeping Property); four counts of violating rule 4-8.4(c) (Misconduct); four counts of violating rule 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose); and three counts of violating rule 5-1.1(e) (Notice of Receipt of Trust Funds; Delivery; Accounting).

For discipline, the referee recommended that this Court suspend Marriaga for three years with proof of rehabilitation required for reinstatement, a three-year nonreporting probation period upon reinstatement, and payment of the Bar's costs. The referee found as aggravating factors that Marriaga demonstrated a pattern of misconduct, had a "dishonest motive" (but not "a selfish

- 7 -

motive"), had substantial experience in the practice of law, committed multiple offenses against vulnerable victims, and refused to acknowledge the wrongfulness of his conduct. In mitigation, the referee found that Marriaga had no prior disciplinary record and noted that "while [his] misconduct was dishonest, it was not unlawful." The referee, in his review of case law, distinguished Marriaga's case from our disbarment of the attorney in *Florida Bar v. Dominguez*, No. SC20-0621, 2021 WL 5493095 (Fla. Nov. 23, 2021) (unpublished), because Dominguez embezzled money.

The referee also noted Marriaga's long-standing business relationship with Steel X, its owners, and its other business entities. While considering Florida's Standards for Imposing Lawyer Sanctions (Standards), the referee analyzed the knowledge and intent definitions found within and stated that Marriaga "clearly knew disbursements were being made contrary to the disclosure statements . . . and that the disbursements were being made to the benefit of Steel X and/or its owners." The referee concluded that Marriaga's conduct was "deliberate and knowing," citing *Florida Bar v. Fredericks*, 731 So. 2d 1249, 1252 (Fla. 1999) ("[I]n order to

satisfy the element of intent it must only be shown that the conduct was deliberate or knowing.").

Neither party challenged the referee's findings or recommendations. We nevertheless issued an order directing Marriaga to show cause why the referee's recommended sanction should not be disapproved and a more severe sanction, including disbarment, be imposed. *See* R. Regulating Fla. Bar 3-7.7(c)(6)(A) ("If no review is sought of a referee's report . . . the findings of fact are deemed conclusive, and the referee's recommended disciplinary measure will be the disciplinary measure imposed by the court, unless the court directs the parties to submit briefs or conduct oral argument on the suitability of the referee's recommended disciplinary measure.").

In his response, Marriaga concedes that enhancements could be added to the referee's recommended discipline. He suggests that his sanction include a reporting probation and a trust accounting workshop.

## II

### A

This Court gives deference to the referee's factual findings regarding each rule violation and will not reweigh the evidence or override the referee's conclusions, so long as those findings are supported by competent and substantial evidence in the record. *Fla. Bar v. Schwartz*, 382 So. 3d 600, 608 (Fla. 2024).  As for the referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations."  *Fla. Bar v. Jacobs*, 370 So. 3d 876, 883 (Fla. 2023).  Neither party contests the referee's findings of fact or recommendations of guilt.  We therefore approve the referee's findings of fact and recommendations of guilt without further discussion.  *See, e.g., Fla. Bar v. Watson*, 405 So. 3d 338, 343 (Fla. 2025) (approving the referee's unchallenged factual findings and recommendations of guilt).

### B

We disapprove the referee's recommended discipline.  Attorney discipline must shield the public from unethical conduct while ensuring penalties are fair and proportionate; hold attorneys

- 10 -

accountable for misdeeds yet encourage their rehabilitation; and communicate that violations of our self-governing standards result in predictable punishment. *See, e.g.*, *Fla. Bar v. Dupee*, 160 So. 3d 838, 853 (Fla. 2015); *Fla. Bar v. Lord*, 433 So. 2d 983, 986 (Fla. 1983). "In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction." *Fla. Bar v. Strems*, 357 So. 3d 77, 90 (Fla. 2022); *see also* art. V, § 15, Fla. Const. Generally, we "will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions." *Fla. Bar v. Swann*, 116 So. 3d 1225, 1237 (Fla. 2013).

Here, Marriaga knew disbursements were wrongly made to benefit Steel X or its owners. The referee determined that Marriaga's conduct was deliberate and knowing, which the referee identified in his report as sufficient to meet the definition of "intent" under the Standards. *See Fredericks*, 731 So. 2d at 1252.

Contrary to the referee's ultimate recommendation, the Standards dictate disbarment for Marriaga's intentional conduct.

- 11 -

*See* Fla. Stds. Imposing Law. Sancs. 4.3 (Failure to Avoid Conflicts of Interest) (proscribing disbarment "when a lawyer causes serious or potentially serious injury to the client and, without the informed consent of the affected client(s) . . . engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another"); 4.6 (Lack of Candor) ("[W]here the lawyer engages in fraud, deceit, or misrepresentation directed toward a client . . . [d]isbarment is appropriate when a lawyer knowingly or intentionally deceives a client with the intent to benefit the lawyer or another regardless of injury or potential injury to the client."); 7.1 (Deceptive Conduct or Statements and Unreasonable or Improper Fees) ("[I]n cases involving deceptive conduct or statements, improper division of fees, or unreasonable or improper fees . . . [d]isbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public, or the legal system.").

Disbarment, as the presumptively appropriate sanction for the intentional misappropriation of funds, is also supported by our

- 12 -

cases. "The Court has repeatedly stated that misuse or misappropriation of funds held in trust is one of the most serious offenses a lawyer can commit and that disbarment is the presumptively appropriate sanction." *Fla. Bar v. Johnson*, 132 So. 3d 32, 38 (Fla. 2013). We have allowed rebuttal of this presumption only "in very limited situations on 'a showing of substantial mitigating circumstances.' " *Fla. Bar v. Bander*, 361 So. 3d 808, 818 (Fla. 2023) (quoting *Fla. Bar v. Alters*, 260 So. 3d 72, 84 (Fla. 2018)); *see also Fla. Bar v. McFall*, 863 So. 2d 303, 309 (Fla. 2003) (imposing a three-year suspension followed by three years' probation for attorney who suffered impaired judgment due to medications and mental health). We have recognized that this presumption of disbarment "is especially weighty when the misconduct is intentional rather than negligent or inadvertent." *Johnson*, 132 So. 3d at 38-39 (collecting cases); *see also, e.g., Fla. Bar v. Wolf*, 930 So. 2d 574, 579 (Fla. 2006) (imposing a two-year suspension with one year of probation for inadvertent misappropriation of trust funds); *Fla. Bar v. Mason*, 826 So. 2d 985, 990 (Fla. 2002) (same); *Fla. Bar v. Whigham*, 525 So. 2d 873, 874 (Fla. 1988) (imposing a three-year suspension for gross negligence

- 13 -

in the absence of willful misappropriation and client financial injury). *But see, e.g., Fla. Bar v. Rousso*, 117 So. 3d 756 (Fla. 2013) (disbarring two attorneys who were grossly negligent in mismanaging trust accounts, resulting in employee embezzling over four million dollars). "Indeed, the overwhelming majority of cases involving the misuse of trust funds have resulted in disbarment . . . ." *Fla. Bar v. Valentine-Miller*, 974 So. 2d 333, 338 (Fla. 2008) (citations omitted); *see also Alters*, 260 So. 3d at 84 (collecting cases). We have also disbarred attorneys who create conflicts of interest in violation of rule 4-1.7. *See, e.g., Bander*, 361 So. 3d 808; *Swann*, 116 So. 3d 1225; *Rousso*, 117 So. 3d 756.

When we consider Marriaga's mishandling of trust funds together with his other rule violations, we find that disbarment is the appropriate sanction. Although Marriaga claimed to not represent Steel X in the real estate transactions and portrayed himself as a "neutral settlement agent," he was far from an uninterested party. The referee's report offers no meaningful distinction between Marriaga and Steel X. Throughout the transactions, Marriaga acted as Steel X's attorney, registered agent, and corporate manager while simultaneously serving as the escrow

and settlement agent for buyers contracting with Steel X. His dual roles placed him on both sides of each transaction, undermining any pretense of neutrality. He did not disclose these overlapping roles to the buyers or obtain their consent. The referee's findings depict a pattern of self-dealing that undermines the foundational duties of loyalty and integrity required of Florida lawyers.

### III

Accordingly, Alejandro L. Marriaga is hereby disbarred from the practice of law in the State of Florida. The disbarment will be effective 30 days from the filing of this opinion so that Marriaga can close out his practice and protect the interests of existing clients. If Marriaga notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Marriaga must fully comply with rule 3-5.1(h) and, if applicable, rule 3-6.1.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Alejandro L. Marriaga in the amount of $7,979.01, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, and Laura N. Gryb, Bar Counsel, The Florida Bar, Orlando, Florida,

    for Complainant

Barry Rigby of Law Offices of Barry Rigby, P.A., Orlando, Florida,

    for Respondent